(January 14, 1898.)

## STEVENS v. HOME SAVINGS AND LOAN ASSN.

[51 Pac. 779.]

USURY.—When the complaint shows that the cause of action is based upon a usurious contract the principal of which has been fully paid, a general demurrer to such complaint should be sustained.

PRACTICE—COUNTERCLAIM.—A cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected therewith, in favor of the defendant, must, to avail such defendant, be set forth in the answer as a counterclaim, and cannot be made the basis of another suit brought by the defendant against the plaintiff in the former suit.

MULTIPLICITY OF SUITS.—Sections 4183, 4184 and 4185 of the Revised Statutes of Idaho are intended to prevent multiplicity of suits and to settle all controversies and causes of action between the parties which arise out of, or are connected with the transaction upon which the plaintiff's action is founded.

RIGHT OF TRIAL BY JURY.—In a suit brought by a mortgagee to recover the statutory penalty for failing to discharge of record a mortgage which has been fully satisfied, the parties or either of them have an absolute right to a trial by jury.

BUILDING AND LOAN ASSOCIATIONS—SUBJECT TO PENALTIES OF USURIOUS CONTRACTS.—A building and loan association loaned money to one of its stockholders, and the contract provided for monthly payments to be applied in "premium for precedence" and on interest. *Held*, in determining whether the contract is usurious or not, the so-called "premium for precedence" must be regarded as interest, and that building and loan associations are subject to the penalties provided in cases of usurious contracts.

(Syllabus by the court.)

APPEAL from District Court, Latah County.

George W. Goode, for Appellants.

There is no showing of merits or answer tendered.   In order
to open or vacate a default he must show to the court a good
defense to the action.   (6 Am. & Eng. Ency. of Pl. & Pr. 181,
182; *People v. Rains,* 23 Cal. 128; *Gibbons v. Scott,* 15 Cal.
285; *Reese v. Mahoney,* 21 Cal. 306; *Bailey v. Taafe,* 29 Cal.
423; *Nevada Bank v. Dresbach,* 63 Cal. 324; *Winninghoff v.
Wittig,* 64 Wis. 180, 24 N. W. 912; *Harsh v. Morgan,* 1 Kan.
293.)   Neither the common law nor any statute has ever au-
thorized the consolidation of cross-actions because from their
very nature they cannot be joined in one action. - (4 Am. & Eng.
Ency. of Pl. & Pr. 696, and note a.)   The court refused to
grant appellant's a jury trial.   (State Const., art. 1, sec. 7,
art. 5, sec. 1.)   Under the constitution every issue of fact in
a civil case (as well as criminal) must be tried by a jury, unless
the same is waived by the parties, and especially in cases of this
nature where fraud is alleged and damages claimed: (Proffatt
on Jury Trials, sec. 89; *Taylor v. Person,* 2 Hawks (N. C.), 298;
*Faulk v. Faulk,* 23 Tex. 653; *Brown v. Burke,* 22 Ga. 574.)
And under the former equity practice appellants would be en-
titled to a jury trial.   (Proffatt on Jury Trials, secs. 91, 92;
Pomeroy's Equity Jurisprudence, secs. 116, 345, 459; Daniell's
Chancery Practice, 1090; note to *Lee v. Tillotson,* 24 Wend.
337, 35 Am. Dec. 624, 626; *Flint River S. B. Co. v. Roberts,*
2 Fla. 102, 48 Am. Dec. 188; *Scott v. Nichols,* 27 Miss. 94, 61
Am. Dec. 503.)   The court erred in its findings of fact, conclu-
sions of law and decree for the reason that this was a usurious
loan from the beginning.   In this case the premium provided
for in the agreement is undoubtedly interest under our statute.
(Code, sec. 1263 et seq.; 4 Am. & Eng. Ency. of Law, 2d ed.,
1056, 1067, 1068, 1071 et seq.; *Mills v. Salisbury Bldg. etc.
Assn.,* 75 N. C. 292.)

Forney, Smith & Moore, for Respondent.

The matters in litigation in the two actions consolidated were
identical.   The respondent could not set up its foreclosure in
the cancellation case, because new parties were required to be
brought in.   The defense to the foreclosure case, with denials,
if maintained, would have entitled appellants to everything asked

for in the original cancellation case. On consolidation, where two cases involve the identical points and subject matter, see *Lincoln-Lucky & Lee Min. Co. v. Hendry,* 9 N. Mex. 149, 50 Pac. 330. The right of a jury trial in this state was never granted in mortgage foreclosure cases. The code and constitution fix it. (Idaho Rev. Stats., secs. 4369, 4405, 4406 et seq.; Idaho Const., art. 1, sec. 7; also art. 5, sec. 1.) Premiums for precedence are not interest. (Thompson on Building and Loan Associations, p. 74, secs. 21, 22; 2 Endlich on Building and Loan Associations, secs. 13, 19, 399.) As to contracts with building and loan associations: *Roberts v. Building etc. Assn.,* 62 Ark. 572, 54 Am. St. Rep. 309, 36 S. W. 1085; *Bank of Newport v. Cook,* 46 Am. St. Rep. 200 (collating cases); 2 Am. & Eng. Ency. of Law, 620-622; Idaho Rev. Stats., secs. 2796-2805 (especially 2801); *Setliff v. North Nashville Bldg. etc. Assn.* (Tenn.), 39 S. W. 546; *Black v. Thompkins,* 63 Ark. 502, 39 S. W. 553.

QUARLES, J.—On the 1st day of June, 1892, De Wit Stevens, Ida E. Stevens, and G. G. Stevens, three of the appellants here, made and entered into a contract with the Home Savings and Loan Association of Minneapolis, Minnesota, a corporation, the respondent here, in words and figures as follows, to wit:

"$2,500.                    Tacoma, Washington, June 1, 1892.

"Received of the Home Savings and Loan Association of Minneapolis, Minnesota, twenty-five hundred dollars, as a loan on twenty-five shares of stock, No. 5,923, owned by us in said association. We, G. G. Stevens and De Wit Stevens and Ida E. Stevens, his wife, agree to pay to said association on the first day of each month, at the office of the association, Tacoma, Washington, thirty-seven and 50/100 dollars, which shall be applied as follows: 1. To the payment of any fines or other assessments made against us in pursuance of the by-laws of said association; 2. To the payment of the premium for precedence due on said loan, amounting to eight and 75/100 dollars per month; 3. To the payment of the interest due on said loan, amounting to twelve and 50/100 dollars per month; 4. The balance of said payments shall be credited as dues on said stock.

Said payments shall be continued until the dues so credited on said stock, together with the dividends declared thereon, shall equal the amount loaned. Should we fail for twelve weeks to pay said monthly payments, then the whole amount on said loan shall at once become due and payable.

(Signed)   "DE WIT STEVENS.<br>
"IDA E. STEVENS.<br>
"G. G. STEVENS."

On said day the appellants above named, to secure the repayment of the loan mentioned in this contract, executed, acknowledged and delivered to the respondent a mortgage upon lot No. 8, in block No. 8, of the town of Moscow, which mortgage was duly recorded. January 4, 1896, the said mortgagors commenced their action in the district court of the second judicial district in and for Latah county, alleging in their complaint the execution and recording of the said mortgage; that they had fully paid off and satisfied the said mortgage, and that the respondent, after demand made upon it to satisfy said mortgage, failed and refused, and still fails and refuses, to satisfy said mortgage of record; and demanded judgment that said mortgage be adjudged satisfied, and that plaintiffs recover the statutory penalty of $100 provided by section 3364 of the Revised Statutes. To this complaint the respondent answered, and denied the satisfaction of said mortgage, and alleged that the sum of $802.91 remained due on the mortgage debt, and demanded judgment "that plaintiffs' cause of action be dismissed; that plaintiffs take nothing thereby; that defendant have judgment against plaintiffs for its costs and disbursements; that the defendant have such other and further relief as to the court seems meet and just in equity." January 31, 1896, the respondent commenced an action against the appellants above named and G. W. Stevens and Lydia E. Stevens to obtain a judgment foreclosing the said mortgage, alleging that there was then due on said mortgage debt the sum of $802.91. The ninth paragraph of the complaint is in the following words and figures, to wit: "That the amount of fines and other assessments made against the said last-named defendants, made in pursuance of the by-laws of the said Home Savings and Loan Association,

from the said first day of June, 1892, to and including the twenty-second day of January, 1896, amounted to the sum of $159.96, no part of which has ever been paid, save and except the sum of ten dollars; that the premium for precedence due on said loan, to and until the twenty-fifth day of January, 1896, amounted to the sum of $278.25, no part of which has ever been paid, save and except the sum of $157.50; that the interest on said loan from June 1, 1892, to January 22, 1896, amounted to $295.50, no part of which has ever been paid, save and except the sum of $225; that no part of the principal of said loan has ever been paid, save and except the sum of $2,191.30; that the membership fee in said association, amounting to twenty-five dollars, has never been paid; that the plaintiff had paid insurance premiums upon policies covering the buildings upon said premises to the amount of twenty-six dollars, no part of which has ever been repaid to plaintiff." To said complaint the appellants filed their demurrer, assigning three grounds: 1. That the complaint does not state facts sufficient to constitute a cause of action; 2. That the court has no jurisdiction of the persons of the defendants; and 3. That there is another action pending between the same parties for the same cause. This demurrer was overruled by the court, which ruling is one of the errors assigned by the appellants. On motion of the respondent, the district court made an order consolidating the two actions, to which the appellants objected, and duly excepted. These consolidated actions were called for trial, and the appellants demanded a jury trial, which was denied them by the court, to which ruling of the court the appellants duly excepted. The court then, on motion of the respondent, took up the foreclosure case first, for trial, without a jury, to which action of the court the defendants duly excepted. The pleadings were then read, and the attorney for the appellants declined in open court to "proceed further in the manner and form as ordered by the court." Thereupon the court found the sum of $800.91 due on said mortgage debt, rendered judgment in favor of the respondent foreclosing said mortgage for the said balance, and costs of action, including eighty dollars attorney's fees. Nothing is said in the judgment about the cause of action brought by the appel-

lants, but the court in its conclusions of law held "that plaintiff is further entitled to a decree of this court decreeing that the defendants De Wit Stevens, G. G. Stevens, and G. W. Stevens are entitled to no judgment against the plaintiff herein for its refusal to release the said mortgage."

The court erred in overruling the demurrer to the complaint in the foreclosure suit brought by respondent. The first ground set forth in the demurrer is well taken. The primary obligation to secure which the mortgage was given, hereinbefore set forth, and which was set forth at length in said complaint, is usurious. It provides for a greater rate of interest than is allowed by law. Under sections 1263 and 1264 of the Revised Statutes, the legal rate of interest is ten per cent per annum, but the parties may agree upon any rate not in excess of one and one-half per cent per month. The contract in question does not fix the rate of interest upon the loan evidenced by it, but it provides for a monthly payment of thirty-seven dollars and fifty cents to be paid thereon, and to be applied in the manner therein provided. The contract provides that eight dollars and seventy-five cents of the monthly payments shall be applied "to the payment of the premium for precedence due on said loan," and that twelve dollars and fifty cents of such monthly payments should be applied "to the payment of the interest due on the said loan," and that "the balance of said payments shall be credited as dues on said stock," and that "said payments shall be continued until the dues so credited on said stock, together with the dividends declared thereon, shall equal the amount loaned." Thus, it will be seen that out of each monthly payment the respondent, for use of the money loaned, retained the sum of twenty-one dollars and twenty-five cents, and that the principal should be reduced to the extent of sixteen dollars and twenty-five cents or less, owing to fines and assessments made pursuant to the by-laws of the respondent. We are inclined to think that, under the provisions of said contract, what is called "premium for precedence" is nothing but interest. It will be seen that, while the principal of the loan is being reduced monthly, the interest payment remains the same, and that, under the terms of the contract, it would take more than twelve years

to repay the said loan.   Now, the amount of the principal that would be owing on this contract would vary in amount, monthly, from $2,500, the amount loaned, to some amount not exceeding sixteen dollars and twenty-five cents, the last payment on the principal.   The amount owing on the principal of the loan would be constantly decreasing, but the interest payment would remain the same, being as much on the last payment as on the first.   It is only a matter of computation to ascertain the average of the time that the principal would be outstanding, and the average rate per cent of the interest paid, and that the average rate would exceed one and one-half per cent per month. The appellant in his brief has tabulated the rate, computing it for every six months, and he places the rate for the first six months at ten and two-tenths per cent, and, for the last six months at 213.38 per cent.   Whether his calculations are correct or not, we have not taken the time to demonstrate, taking it for granted that, inasmuch as his calculation is not challenged for inaccuracy by the respondent's brief (which only challenges the basis on which it is made, it is practically correct.   Usury cannot be sanctioned under any name or guise, and where usury is contracted for, directly or indirectly, the party making the loan cannot, under our statutes, recover any interest or costs.

The complaint in the suit brought by respondent, as shown by paragraph 9, hereinbefore quoted, shows on its face that on the contract in question the appellants had paid $2,583.80, and overpaid the principal of said loan.   For this reason the said complaint on its face showed no cause of action in the respondent, the plaintiff therein.   (See *Building etc. Assn. v. Griffin,* 90 Tex. 480, 39 S. W. 656.)

The third ground of demurrer was well taken.   It was the duty of the respondent to have set up its cause of action in the suit brought by the appellants.   (See Rev. Stats., secs. 4183-4185.)   The pendency of this suit was a bar to the one brought by the respondent, and was, under section 4174 of the Revised Statutes, ground of demurrer.

The complaint in the action brought by the appellants, and the answer of the respondent therein, made the issues necessary to be passed on to settle fully the entire controversy between the

parties.  There was only one issue—whether the mortgage debt
had been fully paid or not.  If the facts pleaded by the respond-
ent in the complaint in its foreclosure suit are true, the mort-
gage debt was fully paid.  That question should have been set-
tled in the suit brought by the appellants, and, if not fully
paid, the respondent should have had a decree of foreclosure
therein.  The cause of action stated in both complaints arose
out of the same transaction, the mortgage in question.  There
was no excuse for bringing the foreclosure suit, and the demur-
rer should have been sustained.

The court erred in refusing to try the appellants' cause of ac-
tion, and also in denying the appellants a jury trial.  They
were entitled to have the issues of fact raised by the pleadings
in their suit to recover a statutory penalty tried by a jury.

We will supplement what we have already said with reference
to the question of usury, that under our statutes it is not neces-
sary to plead usury; that the respondent did not allege the sub-
stance of its by-laws relating to fines or assessments against
stockholders, or show the existence of any fact which, under its
by-laws, made the appellants liable to any fine or assessment
against them as stockholders.  The contract in question was
purely one of loan.  Building and loan associations cannot
collect usury under any guise or name, or by any trick or arti-
fice.  As to interest or compensation for use of money loaned
by such associations, either to their members or other persons,
such associations stand upon the same footing as private individ-
uals.  Under the head of "Building and Loan Associations," 4
American and English Encyclopedia of Law, second edition,
pages 1056, 1057, says: "The remaining view is that the trans-
action is a loan proper, and subject to the usury law.  It is
stated, in support of this idea, that an incorporated association
certainly is not a partnership, and that in case of a loan by an
unincorporated body the ultimate liability does not depend at
all upon the outcome of the venture, and that there is hence no
such uncertainty as would exempt it from the usury law.  It
is said, further, that there is no sale, because the holder still re-
mains the owner of the stock, subject only to the association's
lien, and no redemption, because the stock still remains in ex-

istence, and also that the amount borrowed is to be returned as surely as though in a lump sum." The same authority, in note 4, page 1056, refers to cases in Connecticut, Iowa, Kentucky, Maryland, Nebraska, New York, North Carolina, Pennsylvania, South Carolina, Texas and West Virginia supporting the above rule. The supreme court of North Carolina in *Mills v. Association,* 75 N. C. 292, says: "We know of no device or cover by which these associations can take from those who borrow their money more than the legal rate of interest, without incurring the penalties of our usury laws. Calling the borrower a 'partner,' or substituting 'redeeming' for 'lending,' or 'premium' or 'bonus' for an amount which they profess to have advanced and yet withhold, or 'dues' for 'interest,' or any like subterfuges, will not avail. We look at the substance." The judgment appealed from is reversed, and the consolidated actions are remanded, with instructions to the district court to sustain the demurrer filed by appellants to the complaint of the respondent, and to dismiss the action commenced by the respondent to foreclose said mortgage, and award the appellants their costs in that action, and to proceed and try the suit commenced by appellants conformably to the views herein expressed. Costs of this appeal awarded to the appellants.

Sullivan, C. J., and Huston, J., concur.

HUSTON, J.—The respondent has filed a petition for rehearing, in which several questions are propounded to us, none of which have any bearing upon the questions before us in this cause, for which reason we shall not attempt to answer them. It will be proper, however, to suggest that each of said questions is fully answered by section 1266 of the Revised Statutes and by the opinion of this court in *Trust Co. v Hoffman,* ante, p. 376, 49 Pac. 314. Respondent insists that in the opinion in this case we hold that stock payments made by a member of a building and loan association are payments on the loan. We have not done so. We have construed (properly, we think) the contract in question to be one purely of loan. The fourth paragraph in that contract: "The balance of said payments shall be credited as dues on said stock. Said payments shall be con-

tinued until the dues so credited on said stock. together with the dividends declared thereon, shall equal the amount loaned"—shows conclusively that the credits called "dues" are nothing but payments on the principal of the loan, and that the monthly payments should stop when the aggregate of said dues should equal the principal of the loan. The contract, as a whole, can be construed in no other way. The question of making payments on their stock by the defendants, or the amount that they owe on their stock (unpaid subscriptions), does not arise in this case. The contract in question related to a transaction of loan. So far as the complaint shows, the defendants in the foreclosure case owned the stock named in the contract, and it was fully paid. But, whether that be the fact or not, whatever amount they may have owned on the stock has nothing to do with this case, or the contract in question. Paragraph 9 of the complaint shows that the parties placed the same construction upon said contract that we have given to it. The question of the stock payments of a nonborrowing member are not involved at all in this case. We thought that the original decision in this cause was correct, when made. Since reading respondent's petition for rehearing, we are fully satisfied, beyond doubt, that it is absolutely correct.

The petition for rehearing deals, uniquely and ingenuously, with the question of the right and duty of the defendant to set up its right on the mortgage in question by way of counterclaim in the action brought by the mortgagors to recover the statutory penalty for failure of the mortgagee to discharge said mortgage of record after satisfaction of same. We think that a few suggestions in addition to what we said in the original opinion will dispose of this question. A cause of action, arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action, existing in favor of the defendant and against the plaintiff, or, if more than one plaintiff, against all the plaintiffs, must be set up in the action by the defendant by way of counterclaim or by cross-complaint. If a cause of action exists in favor of the defendant in an action brought upon contract, against the plaintiff, or all of the plaintiffs, upon the contract, such cause of action may

be set up by the defendant by way of counterclaim. But a cause of action in favor of the defendant, against one only of a number of plaintiffs, or in favor of one only of several defendants, cannot be set up by way of counterclaim. In the case at bar there was but one defendant, and a cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, and connected therewith, is alleged to exist in favor of said defendant, and against all of the plaintiffs. Under this state of facts, it was the duty of the defendant (respondent here) to set forth its cause of action in its answer by way of counterclaim. If there were subsequent purchasers or encumbrancers, or claimants to the mortgaged property, the defendant should, under the provisions of section 4188 of the Revised Statutes, have filed with its answer a cross-complaint, or subsequently, with permission of the court, and under said sections 4113 and 4188 of the Revised Statutes, it should have caused such interested parties to be brought into court. These and other provisions of our code were adopted to prevent a multiplicity of suits, to the end that controversies which relate to one transaction should be settled in one, instead of a number of suits.

We were in error as to the proper ruling on the third ground of demurrer. As to that ground, the complaint did not show that both actions were pending. This being true, that question could only be presented by answer, and to this extent the original is modified.

The laborious effort of counsel to establish their case by sophistical and technical arguments, while it may have a pecuniary value as a treatise in favor of the plans and methods of building associations, cannot be accepted as a rule of decision, against the plain and unequivocal provisions of our statutes. No good reason for granting a rehearing being shown, the petition, therefore, is denied.

Sullivan, C. J., and Quarles, J., concur.